UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

=============================================
)
In re:                                                                          ) Chapter 7
    M&M Fishing Corp.,                                        ) No. 09-13111-WCH
                         Debtor    )
)
=============================================

MEMORANDUM OF DECISION ON
DEBTOR'S OBJECTION TO PROOFS OF CLAIM
OF NEW BEDFORD FISHERMEN'S PENSION TRUST

The New Bedford Fishermen's Pension Trust (the "Trust") filed two claims against M&M Fishing Corp. ("Debtor"), each in the amount of $191,010.84.[1] Debtor objected.[2] I held a hearing on February 6, 2012, took the matter under advisement, and requested post-hearing briefs, which were duly filed. After consideration thereof, I will sustain the objection to Claim #1-1, but will overrule the objection to Claim #3-1.

*Background*[3]

Debtor operated a single fishing boat, the F/V Vila de Ilhavo. Debtor, as an employer, was obligated to make employer contributions to the Trust, which is a multi-employer benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* ("ERISA"). Sometime prior to May 22, 2008,

---

[1] Claims ##1-1 and 3-1. The Trust now asserts that the amount of Debtor's liability is $189,069.32. *New Bedford Fishermen's Pension Trust Opposition to Debtor's Objection to Proof of Claim* (the "Opposition"), Docket No.51¶ 16. The parties agree to that amount.
[2] *Debtor's Objection to Proofs of Claim of New Bedford Fishermen's Pension Trust* (the "Objection"), Docket No. 47.
[3] The facts in this and the following sections are, unless otherwise indicated, drawn from the pleadings and memoranda of the parties and are not disputed. I take judicial notice of the docket in the present case. Kowalski v. Gagne, 914 F.2d. 299, 305 (1st Cir. 1990).

1

Debtor had ceased doing business and no longer had any union employees. On that date, it sold its fishing boat.

The Trust asserted a withdrawal liability against Debtor and commenced an action against Debtor in the United States District Court for the District of Massachusetts. Prior to a hearing on the merits of that case, the Debtor filed the current petition for relief under Chapter 7 of the Bankruptcy Code.

As noted above, Debtor objected to the proofs of claim filed by the Trust.

*Positions of the Parties*

*Debtor*

Debtor first points to the duplication of proofs of claim and urges that one be disallowed. It then argues that the remaining claim be disallowed since there is no withdrawal liability because the Trust was solvent at the time of Debtor's withdrawal. Alternatively, if there is in fact liability, it should be capped because all of Debtor's assets were sold to an unrelated entity which results in a limitation of liability at thirty percent of the liquidation value of the assets.

*Trust*

The Trust does not dispute the duplication of proofs of claim and asserts only a single claim of $189,069.32. It asserts that there is in fact withdrawal liability, and that Debtor cannot challenge the amount set by the Trust since it failed to seek arbitration in the time provided by the statute. It denies that the funding status of the Trust eliminates Debtor's liability, and the asserted limitation on liability does not apply. It further asserts that since "the principals of the debtor corporation were found personally liable by this

court for diverting about $70,000 in corporate assets to themselves,"[4] the limitation on liability should not apply.

*Discussion*

*The duplicate proofs of claim*

Because the parties agree, I will sustain the objection to Claim #1-1 and allow Claim #3-1 to remain alive for the moment, subject to Debtor's objection.

*Determination of the amount of withdrawal liability*

There is no dispute that Debtor was an employer participating in the plan and that Debtor did withdraw from the plan. That statute provides that such an employer "is liable to the plan" in an amount determined under the statute.[5] The plan itself must calculate the sum due and send the employer notice of the amount and a demand within a reasonable time after the withdrawal.[6] The requirements have been summarized as follows:

> If the employer objects to the amount or existence of liability, it must within 90 days ask the plan for review. *Id.* § 1399(b)(2)(A). After reasonable review, the plan must notify the employer of its decision. *Id.* § 1399(b)(2)(B). If the parties are still not in agreement, MPPAA provides for the disputes to be resolved through arbitration. *Id.* § 1401(a)(1). Either party may initiate arbitration within a 60-day period after the earlier of either the date the plan notifies the employer of the results of its review or 120 days after the employer's request for review. *Id.*[7]

At the hearing debtor conceded that arbitration had not been appropriately requested.[8] In that situation, the statute provides that

---

[4] Transcript of Hearing, February 6, 2012 ("Transcript"), p. 4, lines 20-22.
[5] 29 U.S.C. § 1381(a).
[6] 29 U.S.C. §§ 1382, 1399(b)(1).
[7] Central States, Southeast and Southwest Areas Pension Fund v. Johnco, Inc., 694 F.Supp. 478, 479 (N.D. Ill. 1988)
[8] Transcript, p.3, lines 11-12. A letter to the Fund from Debtor's prior counsel (Opposition, Ex. C) does appear to request arbitration, but, given the concession of Debtors at the hearing, I will assume that the request was untimely or otherwise ineffective. *See* Opposition, Ex. D.

3

> [T]he amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor.[9]

Debtor would have me challenge the agreed amount:

> The debtor has only recently learned that it does not have any withdrawal liability. The Pension Trust also commenced a lawsuit in the United States District Court for the District of Massachusetts entitled New Bedford Fishermen's Pension Trust et al. v. Cowboy Fishing Corp. Et al. As a result of response to discovery provided by the Pension Trust in that case the debtor has learned that for the years 2007 and 2008, the Pension Trust was solvent. The amount of the withdrawal liability is a proportionate share of the plan's unfunded vested liabilities, as determined under a statutory formula. The Pension Trust had no unfunded vested liabilities when the debtor withdrew, so there was no withdrawal liability. See 29 USC sec. 1381(b)(1).[10]

I have several problems accepting this argument, even though it is clear in this circuit that "the relevant statutory language supports the position that Congress did not intend to impose withdrawal liability on employers in a fully funded plan."[11] First of all, the only evidence before me demonstrating that the Trust had no unfunded vested liabilities for the relevant year is an exhibit to Debtor's Objection which purports to be a pleading from a case in the District Court. Assuming that to be the case, I could take judicial notice of it.[12] But I cannot get that far. Debtor had the ability to test its liability in arbitration and failed to do so. It cannot raise the issue this late in the game, as that would have the effect of writing the time limitation on disputing the Fund's determination of liability out of the statute.[13] Even if I were to ignore Debtor's concession, and even if I

---

[9] 29 U.S.C. § 1401(b)(1).
[10] Objection, ¶ 6.
[11] Berkshire Hathaway, Inc. v. Textile Workers Pension Fund, 874 F.2d 53, 56 (1st Cir. 1989). Neither party cited this case to me.
[12] Elliott v. Papatones (*In re* Papatones), 143 F.3d 623, 624 n.3 (1st Cir. 1998), citing *In re* Henderson, 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996); Taino Lines, Inc. v. M/V Constance Pan Atlantic, 982 F.2d 20, 22 n.8 (1st Cir. 1992).
[13] *See* Canario v. Lidelco, Inc., 782 F.Supp. 749, 754-55 (E.D. N.Y. 1992) (employer is required to raise challenge to action under Multiemployer Pension Plan Amendment Act, based on allegations of zero liability, within 60 days of

were to hold that prior counsel's letter of June 28, 2008, was a timely and effective initiation of arbitration, Debtor did not make interim payments on the asserted liability as required to preserve its rights under the statute.[14] Debtor's contention that there should be no withdrawal liability has been waived by its failure to protect its rights.

*The insolvency cap*

Finally, Debtor urges that its liability be limited by what has been described as the "insolvency cap" under § 1405(a) of ERISA,[15] which limits an employer's liability to (as applicable here) to thirty percent of the proceeds of the sale of substantially all of its assets in an arm's-length transaction to an unrelated party. However, it has been held in this District that "by failing to initiate arbitration, an employer waives its insolvency defense pursuant to [§1405]."[16] This defense must fail as well.

*Conclusion*

For the reasons stated, Debtor's objection to Claim #1-1 is sustained, Debtor's objection to Claim #3-1 is overruled.

_____
William C. Hillman
United States Bankruptcy Judge

April 6, 2012.

Counsel appearing:

Roger Stanford, Stanford & Schall, New Bedford, MA, for Debtor
Mary Ellen Kelleher, Mickelson Barnet, P.C., New Bedford, MA, for the Trust

---

receiving notification of its determined withdrawal liability; if it does not raise challenge within 60 days, employer is barred from challenging determination.)

[14] *See* Debreceni v. Merchants Terminal Corp., 889 F.2d 1 (1st Cir. 1989).

[15] 29 U.S.C. § 1405(a)(1).

[16] Langone v. Bridgeport Steel Co., 757 F.Supp.2d 62, 65 (D. Mass. 2010); Langone v. Yankee Food Distributors, Inc., No. 94-10803-MEL, 1995 WL 791942 *2 (D. Mass. Dec. 28, 1995).

5